## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK T. ALBERT,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:07-CV-0007** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **KARNES, <u>et al</u>.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM AND ORDER</u>

Presently before the Court is a motion to dismiss the civil rights complaint filed pursuant to 42 U.S.C. § 1983 of Plaintiff Derrick T. Albert ("Albert"), filed on behalf of prison officials from the Lebanon County Correctional Facility ("CCF-Lebanon") in Lebanon, Pennsylvania (collectively, "Defendants").[1]  (Doc. No. 12.)  For the reasons set forth below, the motion to dismiss will be granted.

### I.    <u>Statement of Facts</u>

The allegations in Albert's complaint relate to events occurring between October and December 2006.  Initially, Albert claims that Defendants committed several unspecified constitutional violations in connection with alleged incidents at CCF-Lebanon, and which led to a disciplinary hearing at the institution.  Albert also claims that Defendants have denied him the constitutional right of access to the courts by not providing him with an adequate law library and requested legal materials.

In response, Defendants have filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants argue that Albert has failed to set forth any constitutional violations, and thus his complaint should be dismissed with prejudice.

---

[1] Named as defendants are Robert J. Karnes, Warden of CCF-Lebanon; Anthony J. Hauck, Deputy Warden of CCF-Lebanon; and Kevin B. Hoch, Jr., a corrections officer at CCF-Lebanon.

**A.      Incidents Leading to Disciplinary Hearing**

Albert claims that on October 25, 2006, Defendant Hoch made statements to another inmate which caused Albert to be subsequently labeled a "snitch."  (Doc. No. 1 at 2.)  He also claims that his life was threatened as a result of Defendant Hoch's statements.  (Id.)  On October 27, 2006, he filed a written complaint about Defendant Hoch's statements to Defendants Karnes and Hauck.  (Id.)  Because the complaint involved allegations that Albert was a "snitch," and there existed potential for other inmates to discover these allegations, on October 29, 2006, Albert was relocated to CCF-Lebanon's Restricted Housing Unit ("RHU") and placed in administrative segregation.

Albert next claims that on October 29, 2006, Defendant Hoch approached him in the RHU.  Albert's recollection of their exchange is as follows:

> He asked me, "Why did I put his own job in jeopardy."  I told him, "He put his own job in jeopardy when he started talking to inmates about me."  He said, "You are going to believe what an inmates [saids] I says [sic] over an officer?"  I said, "Yes."  He made a very disturbing comment.  He stated, "Well they will believe me before they believe you."  I asked him what he meant.  He said, "You'll see."

(Doc. No. 1 at 4.)  Defendant Hoch filed a misconduct report addressing this exchange.  He, however, provided another version of the exchange:

> Inmate Derek Albert stated, "Other inmates are telling me that you are dropping my name as a snitch."  I informed him, "I am here to do my job, and my job only. At no point did I say anything to any inmate about him."  At this point, inmate Derek Albert stated, "You know what, I don't care about that f***ing badge anymore, if you are in here when my cell is open, you are getting your f***ing a** kicked.  I'm tired of this f***ing bullshit."  Inmate Derek Albert was informed he will receive a major misconduct for threatening an officer.  He then stated, "I don't give a f*** what you f***ing do. We'll see what happens a**hole."

(Id. at 13.)  Based on this language cited in Defendant Hoch's report, Albert was charged with threatening an officer and gross disrespect towards an officer.  (Id.)

After the report was filed, Albert was informed that he would be provided a disciplinary hearing before CCF-Lebanon's Disciplinary Board to address his statements made to Defendant Hoch.  Prior to the hearing, on October 31, 2006, Albert submitted a written request to

2

Defendant Karnes, seeking appointment of counsel for his disciplinary hearing and suspension of Defendant Hoch pending the investigation into the incidents of October 25 and 29, 2006.  (<u>Id</u>. at 7.)  Defendant Karnes responded on November 1, 2006, denying both requests.  (<u>Id</u>. at 7-8.)

The disciplinary hearing was held on November 2, 2006.  (<u>Id</u>. at 6.)  Albert was read his <u>Miranda</u> warnings prior to the hearing, and claims that he invoked his right to an attorney and exercised his right to remain silent.  (<u>Id</u>.)  Albert asserts that it was his intention to call three witnesses, but the Disciplinary Board would only allow testimony from one witness.  (<u>Id</u>.)  In the decision of the Disciplinary Board, however, the Board indicates that "Although [Albert] wanted to call everyone in the RHU out as a witness the board felt that it would be redundant to here [sic] the same story over and over."  (<u>Id</u>. at 12.)  After hearing the testimony of Albert's witness, who claimed that the "misconduct is wrong and that nothing like what was written happened at all," (<u>id</u>.), the Board found Albert guilty of misconduct, and ordered that he be placed in disciplinary confinement for a period of sixty (60) days.  (<u>Id</u>.)

Albert appealed the Board's decision to the Warden, Defendant Karnes.  (<u>Id</u>. at 11.)  Defendant Karnes denied Albert's appeal based on his  failure to produce evidence at the disciplinary hearing which would refute the allegations concerning Defendant Hoch.  (<u>Id</u>.)  In his complaint, however, Albert states that he believes Defendant Karnes denied the appeal because Albert invoked his right to remain silent at the hearing.  (<u>Id</u>. at 6.)

**B.     Right of Access to the Courts**

Albert also claims that Defendants have denied him the right of access to the courts.  In support, he states that in October and November 2006, he submitted inmate requests to Defendant Hauck, requesting West's Pennsylvania Digest 49A (Prisons) and Purdon's Title 61, Prison Law.  (<u>Id</u>. at 5-6.)  He claims that Defendant Hauck refused to provide him with these books.  (<u>Id</u>. at 6.)  Later in the complaint, Albert makes a general allegation that CCF-Lebanon's law library is outdated, and does not have "Federal 2d books."  (<u>Id</u>.)

## II.   <u>Standard of Review - Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim that fails to assert a basis upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000) (citing <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)).  Although the court is generally limited in its review to the facts alleged in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that, although a district court ruling on a motion to dismiss may not generally consider matters extraneous to the pleadings, a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment") (quoting <u>Shaw v. Digital Equip. Corp.</u>, 82 F.3d 1194, 1224 (1st Cir. 1996)).

The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).  "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff's cause of action."  <u>Langford</u>, 235 F.3d at 847.  The court must grant leave to amend before dismissing a complaint that is merely deficient.  <u>See</u> <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   <u>Discussion</u>

In order to state a viable § 1983 action, a plaintiff must make a showing that the conduct complained of was committed by a person acting under color of state law and that said conduct

deprived him of a right, privilege, or immunity secured by the Constitution or by a statute of the United States.  See Cohen v. City of Philadelphia, 736 F.2d 81, 83 (3d Cir.), cert. denied, 469 U.S. 1019 (1984).  A prerequisite for a viable civil rights claim is that a defendant has personal involvement with the deprivation of a plaintiff's constitutional rights.  Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990).

Defendants seek dismissal of the complaint on the grounds that Albert has failed to state a constitutional claim against Defendants.  Specifically, Defendants contend that Albert's claim that Defendant Hoch provided false allegations against him fails to set forth a constitutional claim.  Further, Defendants argue that Albert has failed to plead that he suffered any actual injury as a result of Defendant Hoch's alleged statements.  Defendants also contend that Albert has failed to set forth a constitutional claim with respect to any procedural due process violations related to his disciplinary hearing. Finally, Defendants argue that Albert's allegations that CCF-Lebanon's law library is not adequate fails to set forth a constitutional claim because such a general allegation does not establish an actual injury on his part.  The Court will address these issues in turn.

A.    **Events Relating to Disciplinary Hearing**

As stated above, Albert claims that Defendants have committed several constitutional violations in the events leading to a disciplinary hearing.  Albert also claims constitutional violations during and after that hearing.  Defendants counter that Albert has failed to support any constitutional claim in his complaint, and thus it should be dismissed with prejudice.

1.    **False Statements by Defendant Hoch**

Albert claims that Defendant Hoch made false statements about him on two separate occasions.  He first avers that on October 25, 2006, Defendant Hoch informed another inmate that Albert had told him the inmate was "extorting inmates."  (Doc. No. 1 at 1.)  That false statement, Albert claims, caused him to be labeled a "snitch," and his life to be threatened.

Albert also alleges that Defendant Hoch filed a false misconduct report following a conversation he had with Albert in the RHU on October 29, 2006.  That misconduct report led to Albert's disciplinary hearing.  Viewing the complaint in a light most favorable to the plaintiff, the Court concludes that Albert has failed to state a constitutional claim on this issue.

As long as an inmate charged with misconduct has been afforded the procedural due process protections required by the United States Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539 (1974), an allegation that he was falsely accused does not state a claim for violation of his constitutional rights, at least where, as here, the false charges are not alleged to have been filed in retaliation for the inmate's exercise of a constitutional right.  Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa.), aff'd mem., 980 F.2d 722 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993); Wilson v. Maben, 676 F. Supp. 581, 584 (M.D. Pa. 1987) ("When an inmate charged with misconduct has been afforded the procedural due process protections required by Wolff . . . , an allegation that he was falsely accused does not state a claim or a violation of his constitutional rights under § 1983"); Freeman v. Rideout, 808 F.2d 949, 952-54 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988) (planting of false evidence by prison guard does not amount to constitutional misconduct where inmate has been provided due process).  The general rule, as stated in Freeman, is a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  The plaintiff . . . has the right not to be deprived of a protected liberty interest without due process of law."  Freeman, 808 F.2d at 951.  Consequently, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of misconduct.

In the instant case, Albert does not allege in his complaint that Defendant Hoch issued the misconduct in retaliation for Albert's exercise of a protected right.[2]  He simply alleges that

_____

[2] To the extent that Albert has alleged a retaliation claim for the first time in his opposition to the motion to dismiss, that claim is not properly before the Court.  Albert's argument that Defendant Hoch retaliated against him by filing a misconduct report that resulted

Defendant Hoch falsified the misconduct report, as well as made false statements about Albert to other inmates, purportedly for no apparent reason.  These allegations that Albert was falsely accused, without more, fail to state a civil rights claim.  See Flanagan, 783 F. Supp. at 931-32. Thus, the motion to dismiss will be granted with respect to this issue.

### 2.    Albert's Failure to Plead Injury

In his complaint, Albert avers that Defendant Hoch's statements, which caused him to be labeled a "snitch," led to threats upon his life.  In response, Defendants argue that because Albert has failed to allege any physical injury as a result of those statements, he has failed to state a claim upon which relief can be granted.  The Court agrees.

Section 803(d) of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321-72, codified at 42 U.S.C. § 1997e(e), conditions a prisoner's claim for mental or emotional injury on a showing of accompanying physical injury.  Under § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The "physical injury" requirement of § 1997e(e) may be satisfied by a "less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury." Mitchell v. Horn, 318 F.3d 523, 534 (3d Cir. 2003).

Albert alleges in his complaint that the statements made by Defendant Hoch caused his life to be threatened, presumably by other inmates.  But Albert does not allege any physical injury in the complaint.  He appears to be claiming damages solely for fear or emotional injury resulting from these threats.  However, in his response to the instant motion, he adds that on October 30, 2006, he was assaulted in his housing unit after Defendant Hoch made statements about him to another inmate.  (Doc. 18 at 2.)  He avers that after the assault he informed unnamed corrections officers immediately that he needed to be relocated.  (Id.)  The officers

---

in a disciplinary hearing that caused Albert to be denied parole, (Doc. No. 20 at 5), should be asserted in a new action.

responded, and Albert was placed in the RHU that same day.  (Id.)  He further claims that once in the RHU, he was "forced to fight" his cellmate, and the two were immediately separated by corrections officers.  (Id.)  Albert does not allege he required any medical treatment or sustained any physical harm.  In fact, he claims solely that he has been "emotionally damaged" as a result of the statements made by Defendant Hoch.  (Doc. 20 at 2.)

Although Albert fails to allege any physical injury from the threats to his life, the Court's review of his Eighth Amendment failure-to-protect claim does not end there.  In Mitchell, the Third Circuit stated what types of relief a prisoner may obtain in the absence of physical injury accompanying a constitutional violation:

> Section 1997e(e)'s requirement that a prisoner demonstrate physical injury before he can recover for mental or emotional injury applies only to claims for compensatory damages.  Claims seeking nominal or punitive damages are typically not "for" mental or emotional injury but rather "to vindicate constitutional rights" or "to deter or punish egregious violations of constitutional rights," respectively.

318 F.3d at 533.

Thus, while Albert's lack of physical injury precludes the award of compensatory damages for emotional distress, it does not foreclose the granting of declaratory relief as well as nominal and punitive damages for confirmed violations of his constitutional rights.  See Doe v. Delie, 257 F.3d 309, 314 n.3 (3d Cir. 2001) ("However, § 1997e(e) does not bar claims seeking nominal damages to vindicate constitutional rights, nor claims seeking punitive damages"); Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3d Cir. 2000) (holding that § 1997e(e) does not bar nominal and punitive damages for violations of constitutional rights even in the absence of physical injury).  In light of the above discussion, although Albert is not entitled to compensatory damages for the emotional distress he allegedly suffered as a result of threats upon his life, since he incurred no physical injury as a result of these alleged threats, the Court will address his failure-to-protect claim because Albert has also sought declaratory relief related to

these alleged threats.[3]

The Eighth Amendment imposes "a duty on prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'" <u>Hamilton v. Leavy</u>, 117 F.3d 742, 746 (3d Cir. 1997) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)).  However, not every injury caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety.  <u>Farmer</u>, 511 U.S. at 834.  Under <u>Farmer</u>, in order for an inmate to prevail on a claim involving deliberate indifference by a corrections officer, an inmate must satisfy a two-pronged test that includes an objective and subjective component.  The inmate must show (1) that the prison conditions posed a substantial risk of serious harm and (2) that prison officials were deliberately indifferent to the inmate's safety.  <u>Id</u>.

Prison officials exhibit deliberate indifference when they know of and disregard an excessive risk to inmate safety; mere negligence will not suffice.  <u>Id</u>. at 835, 837.  To constitute deliberate indifference as defined in <u>Farmer</u>, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id</u>. at 837.  This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001).  There must be actual knowledge of the risk before the inmate's injury occurred.  <u>Id</u>.

Viewing the complaint in a light most favorable to the plaintiff, Albert has failed to state a claim that any defendant was deliberately indifferent to the risk of harm other inmates posed to him as a result of Defendant Hoch's alleged statements.  His complaint simply states that his life has been threatened; he does not allege that any named defendant was aware of any substantial risk of serious harm to Albert because of the alleged statements, nor does he allege that

---

[3] As relief, Albert seeks, in part, "a box in all units for mail, grievances, and inmate requests."  (Doc. No. 1 at 3.)

Defendants disregarded that risk.  As such, Albert has failed to state a claim for relief on this issue.

### 3.      Due Process During Disciplinary Hearing

In his complaint Albert challenges the process afforded him during the disciplinary hearing.  Specifically, he claims that the Disciplinary Board refused to call all of his potential witnesses.  In addition, he contends that he was denied the right to counsel at the disciplinary hearing.  Finally, he argues that the Warden improperly denied his appeal from the Board's decision.

### a.      Witnesses

In Wolff, the Supreme Court set forth the due process requirements for a prison disciplinary hearing.  It held, *inter alia*, that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  Id. at 566.  Noting that "the unrestricted right to call witnesses from the prison population carries obvious potential for disruption . . . ," the Court indicated that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority . . . ."  Id.  "Within the reasonable limitations necessary in the prison disciplinary context, [the Court in Wolff] suggested, but did not require, that the disciplinary committee 'state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases."  Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (quoting Wolff, 418 U.S. at 566).

In the present case, Albert contends that it was his desire to call three witnesses at his hearing, but he was only permitted to call one of those witnesses.  In their reply to Albert's response to the motion to dismiss, Defendants contend that Albert's due process rights were not violated with respect to this claim because the Disciplinary Board provided him with an explanation as to why his remaining witnesses would not be called.  Specifically, the

Disciplinary Board noted that Albert made it known that he wanted to call everyone in the RHU as a witness.  The Board reasoned that it would be redundant to hear the same account repeatedly, and thus permitted testimony from only one witness.  Here, while the Supreme Court's reasoning in <u>Wolff</u> is instructive, in light of the procedural posture of the instant case, the Court will not consider the Disciplinary Board's explanation on this Rule 12(b)(6) motion. <u>See</u> <u>Young v. Kihl</u>, 720 F. Supp. 22, 25 (W.D.N.Y. 1989) (concluding "the existence of a valid reason for the refusal to allow an inmate to call witnesses . . . should be conceived of as an affirmative defense, consideration of which may not be had on a rule 12(b)(6) motion") (discussing <u>Ponte v. Real</u>, 471 U.S. 491 (1985)).  Rather, such an evaluation under <u>Wolff</u> must await a motion for summary judgment.  Accordingly, the Defendants' motion to dismiss as to this claim is denied.

### b.  Right to Counsel

Turning to Albert's contention that he was denied the right to counsel at his hearing, it is well-established that inmates do not have a right to counsel, either retained or appointed, at a prison disciplinary hearing.  <u>See</u> <u>Wolff</u>, 418 U.S. at 570.  In <u>Wolff</u>, the Supreme Court reasoned,

> The insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals.  There would also be delay and very practical problems in providing counsel in sufficient numbers at the time and place where hearings are to be held.  At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings.

<u>Id</u>.  Based on this clearly established law, Albert has failed to state a claim for relief on this basis.

### c.  Right to Appeal

Albert claims that his constitutional rights were violated because the Warden, Defendant Karnes, denied his appeal based on the fact that Albert exercised the right to remain silent at his disciplinary hearing.  The Court concludes this claim is without merit.

It is well-established that prisoners have no constitutionally protected right to a grievance

procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38

(1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are

constitutionally mandated"); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997).  While

prisoners do have a constitutional right to seek redress of their grievances from the government,

that right is the right of access to the courts and such a right is not compromised by failure of the

prison to address an inmate's grievance.  See Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del.

1195), aff'd, 74 F.3d 1226 (3d Cir. 1995) ("a state grievance procedure does not confer any

substantive constitutional right upon prison inmates") (citation omitted).

   In the instant case, in his decision on appeal from the Disciplinary Board's decision,[4]

---

[4] To the extent that the Court construes Albert's complaint as claiming the Disciplinary
Board found Albert guilty of a false misconduct, the Court concludes that Albert has failed to
state a claim.

   The Fourteenth Amendment of the United States Constitution provides, in pertinent part,
"No State shall . . . deprive any person of life, liberty, or property, without due process of law . . .
."  U.S. Const. amend. XIV.  In order to determine whether a due process violation has occurred,
an initial determination must be made that a protected liberty interest exists and, if so, the next
step is to define what process is mandated to protect it.  See Sandin v. Conner, 515 U.S. 472, 484
(1995); Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

   In Sandin, the Supreme Court established a standard for determining whether prison
conditions deprive a prisoner of a liberty interest that is protected by procedural due process
guarantees.  It held that due process requirements would only apply where the prison's actions
impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of
prison life."  Sandin, 515 U.S. at 484.  Thus, confinement in administrative or punitive
segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation
of prison life necessary to implicate a liberty interest.  Id. at 486.  Resultantly, the Sandin Court
found that the denial of the inmate's witness at his misconduct hearing did not violate due
process because he did not have a protected liberty interest in remaining free of segregated
housing, and his thirty (30) day detention "did not exceed similar, but totally discretionary,
confinement in either the duration or degree of restriction."  Id. at 486.

   Accepting Albert's allegations as true, that the Disciplinary Board found him guilty of a
false misconduct, this allegation in itself does not constitute a deprivation of a constitutional
right.  See Freeman v. Rideout, 808 F.2d 949 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988);
Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992),
cert. denied, 510 U.S. 829 (1993).  Thus, Albert has no due process right not to be placed in
disciplinary segregation.  Such placement is not an "atypical and significant hardship in relation
to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  See also Smith v. Mensinger,
293 F.3d 641, 652-53 (3d Cir. 2002) (finding claim that false misconduct resulted in seven

Defendant Karnes stated, "Based on the fact that you failed to provide testimony at your scheduled disciplinary hearing which would refute your allegations concerning Officer Hoch, your appeal is denied."  (Doc. No. 1 at 11.)  In his complaint, Albert interprets the Warden's language to mean that his appeal was denied because he had not testified at his own disciplinary hearing.  (Id. at 6.)  The Court does not read the Warden's decision as such.  The Warden clearly denied the appeal because the testimony Albert *did* provide was not sufficient to rebut Defendant Hoch's misconduct report or establish that Defendant Hoch's statements were false.  Accordingly, to the extent that Albert contends that Defendants violated his constitutional rights by failing to rule in his favor on appeal from the Disciplinary Board's decision, Albert fails to state a claim.

###    B.    Right of Access to the Courts

Albert also claims that Defendants have denied him the right of access to the courts by failing to provide him with adequate legal resources in the prison's law library and with requested legal materials.  The Court concludes that this claim is without merit.

"[P]risoners have a constitutional right of access to the courts."  Bounds v. Smith, 430 U.S. 817, 821 (1977).  In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Id. at 828.  The right of access to the court is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the

_____

months' disciplinary confinement did not state a due process violation).  Albert, like Sandin, cannot assert a due process violation in connection with the Disciplinary Board's denial of his request for additional witnesses or its determination of misconduct, as Albert had no protected liberty interest in remaining free of disciplinary custody.

incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  Id. at 348-51; see also Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."  Lewis, 518 U.S. at 351.

In the instant case, Albert generally asserts, "[CCF-Lebanon's] law library is outdated plus have no Federal 2d books at all."  (Doc. No. 1 at 6.)  He also claims that Defendant Hoch refused to provide him with requested legal materials.  These allegations, however, fail to allege any actual injury as a result of the alleged limitations on his use of the law library or his failure to obtain certain legal materials.  Moreover, Albert has been able to file this complaint without any allegations that his efforts to do so were encumbered in any way.  Therefore, Albert fails to show actual injury with respect to his claim that he was denied access to the courts by way of inadequate law library access or other access to legal materials, and this claim will be dismissed, without prejudice, accordingly.

**IV.    Conclusion**

Based on the foregoing, Defendants' motion to dismiss as to Albert's claims related to Defendant Hoch's misconduct report will be granted because the claims do not rise to the level of a constitutional violation.  Furthermore, the motion to dismiss will also be granted as to Albert's due process claims related to the right to counsel at his disciplinary hearing and the right to appeal the Board's decision.  However, the Court will allow Albert's due process claim with respect to the calling of witnesses at the disciplinary hearing to go forward at this initial

stage of the action.  Finally, the motion to dismiss with respect to Albert's claim of denial of access to the courts will be granted.

An appropriate order follows.

**V.     Order**

**AND NOW**, this 19ᵗʰ  day of March, 2008, upon consideration of Defendants' motion to dismiss (Doc. No. 12), and for the reasons set forth above, **IT IS HEREBY ORDERED THAT**:

1.     Defendants' motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 12) is GRANTED in part and DENIED in part:

   a.     Defendants' motion (Doc. No. 12) is GRANTED, without prejudice, as to Plaintiff's claim relating to a false misconduct report filed by Defendant Hoch;

   b.     Defendants' motion (Doc. No. 12) is DENIED as to Plaintiff's due process claim with respect to his right to call witnesses at the disciplinary hearing;

   c.     Defendants' motion (Doc. No. 12) is GRANTED, with prejudice, as to Plaintiff's remaining due process claims relating to the disciplinary hearing; and

   d.     Defendants' motion (Doc. No. 12) is GRANTED, without prejudice, as to Plaintiff's claim of denial of access to the courts.

2.     Within twenty (20) days of the date of this Order, Defendants shall file an answer, with affirmative defenses, to Plaintiff's due process claim relating to his right to call witnesses at the disciplinary hearing.

S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania