**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK T. ALBERT,** | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:07-CV-0007 |
| | : | |
| v. | : | **(Chief Judge Kane)** |
| | : | |
| **KARNES, ET AL.,** | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

### I.   INTRODUCTION

Plaintiff Derrick T. Albert ("Albert"), an inmate currently incarcerated at the State Correctional Institution at Smithfield, in Huntingdon, Pennsylvania ("SCI-Smithfield"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against several prison officials from the Lebanon County Correctional Facility ("CCF-Lebanon") in Lebanon, Pennsylvania (collectively, "Defendants").[1]  (Doc. No. 1.)  On March 19, 2008, the Court granted, in part, Defendants' motion to dismiss the complaint.  (Doc. No. 22.)  One due process claim relating to witnesses at Albert's disciplinary hearing remains.  Defendants have filed a motion for summary judgment with respect to the remaining claim.  (Doc. No. 25.)  For the reasons that follow, the motion for summary judgment will be granted.

### II.   BACKGROUND

Defendants seek summary judgment in part on the grounds that there existed a reasonable basis for refusing to allow Albert to call additional witnesses at his disciplinary hearing.  The background is as follows.[2]

---

[1] Named as defendants are Robert J. Karnes, Warden of CCF-Lebanon; Anthony J. Hauck, Deputy Warden of CCF-Lebanon; and Kevin B. Hoch, Jr., a corrections officer at CCF-Lebanon.

[2] In accordance with the standard of review for a motion for summary judgment, the Court will present the facts in the light most favorable to Albert, the non-moving party.  See infra Part III.  Additionally, under Middle District Local Rule 56.1, a party moving for summary

On October 29, 2006, Defendant Hoch approached Albert in CCF-Lebanon's Restricted Housing Unit ("RHU"), where the two exchanged words.[3] Albert's recollection of their exchange is as follows:

> He asked me, "Why did I put his own job in jeopardy." I told him, "He put his own job in jeopardy when he started talking to inmates about me." He said, "You are going to believe what an inmates [saids] I says [sic] over an officer?" I said, "Yes." He made a very disturbing comment. He stated, "Well they will believe me before they believe you." I asked him what he meant. He said, "You'll see."

(Doc. No. 1 at 4.) Defendant Hoch filed a misconduct report addressing this exchange. He, however, provided another version of the exchange:

> Inmate Derek Albert stated, "Other inmates are telling me that you are dropping my name as a snitch." I informed him, "I am here to do my job, and my job only. At no point did I say anything to any inmate about him." At this point, inmate Derek Albert stated, "You know what, I don't care about that f***ing badge anymore, if you are in here when my cell is open, you are getting your f***ing a** kicked. I'm tired of this f***ing bullshit." Inmate Derek Albert was informed he will receive a major misconduct for threatening an officer. He then stated, "I don't give a f*** what you f***ing do. We'll see what happens a**hole."

---

judgment must file a "separate, short and concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." A party opposing a summary judgment motion must respond to the numbered paragraphs in the moving party's statement of material facts. Both the movant's and the opponent's statements of material facts must contain references to the record to support their respective assertions. "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1. In this case, Defendants have submitted a statement of material facts. (Doc. No. 26.) Albert filed a counterstatement of material facts; however, the only disputed issue of material fact set forth by Albert that can be construed as relating to the remaining claim is his statement, "Whether plaintiff was denied due process during a misconduct hearing." (Doc. No. 31.) This general assertion, however, makes no reference to the record.

[3] By way of background, in his complaint Albert claims that on October 25, 2006, Defendant Hoch made statements to another inmate which caused Albert to be subsequently labeled a "snitch." (Doc. No. 1 at 2.) He also claims that his life was threatened as a result of Defendant Hoch's statements. (Id.) On October 27, 2006, he filed a written complaint about Defendant Hoch's statements to Defendants Karnes and Hauck. (Id.) Because the complaint involved allegations that Albert was a "snitch," and there existed potential for other inmates to discover these allegations, on October 29, 2006, Albert was relocated to CCF-Lebanon's Restricted Housing Unit ("RHU") and placed in administrative segregation.

(Id. at 13.) Based on this language cited in Defendant Hoch's report, Albert was charged with threatening an officer and gross disrespect towards an officer. (Id.)

After the report was filed, Albert was informed that he would be provided a disciplinary hearing before CCF-Lebanon's Disciplinary Board ("Board") to address his statements made to Defendant Hoch. The Chairman of the Board, Michael Stuckey, conducted the disciplinary hearing on November 2, 2006.[4] (Doc. No. 26 at ¶ 5.) Albert was read his <u>Miranda</u> warnings prior to the hearing, and exercised his right to remain silent after indicating he had turned over all relevant evidence to his lawyer. (Id. at ¶12.) Albert did not testify on his own behalf, (id. at ¶ 13), but was permitted to call one witness, (id. at ¶ 14.) Albert's witness, Manuel Almestica, read the following prepared statement:

> My name is Manuel Almestica and I'm writing on behalf of Derrick Albert that I was standing right their [sic] when Mr. Albert call Mr. Hoch over to the gate to ask him a question. It took place around 8:00 am this morning. Mr. Albert ask Mr. Hoch why is he sending rumors about Mr. Albert writing a slip on somebody. It wasn't no problem then. And around 12:15 Mr. Hoch came back and ask Mr. Albert why are you trying to get me fired, I only come here to do my job. Mr. Albert then said doing your job doesn't give you a reason to talk to an inmate about me. And then Mr. Hoch said I didn't say anything about you to anybody. Mr. Albert then said I'm going to believe an inmate before I believe a correction officer and we will get this straight on Monday when we talk to the warden. Mr. Hoch then said they will believe an officer before they believe Mr. Albert. Mr. Hoch left and Officer Shirk return with a disciplinary report. And at the time I, Manuel Almestica, read the report. Ain't no time did Mr. Albert threatening Mr. Hoch.

(Doc. No. 25-4 at 7.) Mr. Stuckey considered Mr. Almestica's statement simply a general denial that Albert had committed any misconduct, and thus found his statement lacked credibility. (Doc. No. 26 at ¶¶ 17-18.)

Albert also indicated that he wished to call additional RHU inmates as witnesses to testify on his behalf, but did not provide any reasoning for the need to call these additional witnesses, such as how their testimony would have differed from that of Mr. Almestica. (Doc. No. 26 at ¶¶ 19-20.) In fact, the Board was aware that five days had elapsed from the time of

---

[4] In support of their facts relating to the disciplinary hearing, Defendants have submitted an affidavit of Mr. Stuckey. (<u>See</u> Doc. No. 25-4 at 1-3.)

Albert's conduct in question to the time of the hearing. (Doc. No. 26 at ¶ 21.) Based on his experience with Board proceedings, Mr. Stuckey has found that when such periods of time elapse between an alleged misconduct and a disciplinary hearing, inmates discuss testimony and try to collaborate in forming a consistent story for the Board. (Id. at ¶ 22.) As a result, Mr. Stuckey reasonably believed that if he permitted Albert to call additional witnesses who would make general denials of Albert's misconduct, it would undermine the authority of the Board "while making a mockery of a serious disciplinary proceeding." (Id. at ¶ 24.) Based on this reasoning, the Board determined that additional witness testimony would be redundant and denied Albert's request. (Id. at ¶ 23; Doc. No 25-4 at 5.) Furthermore, after considering the evidence, the Board found Albert guilty of misconduct, and ordered that he be placed in disciplinary confinement for a period of sixty days. (Id. at 5.)

Albert filed the instant action on January 3, 2007. (Doc. No. 1.) In his complaint, Albert claims that Defendants committed several unspecified constitutional violations in connection with the October 29, 2006, incident, and which led to the disciplinary hearing. Albert also claims that Defendants denied him the constitutional right of access to the courts by not providing him with an adequate law library and requested legal materials. In response, Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc. No. 12.) By order dated March 19, 2008, the Court granted, in part, Defendants' motion to dismiss. (Doc. No. 22.) Specifically, the Court allowed only Albert's due process claim with respect to the calling of witnesses at the disciplinary hearing to go forward. Consequently, Defendants have filed the instant motion for summary judgment seeking dismissal of Albert's final claim. (Doc. No. 25.)

## III.  STANDARD OF REVIEW

Through summary adjudication the Court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56 (c). It places the burden on the non-moving party

to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## IV.  DISCUSSION

In his complaint, Albert asserts that his right to due process was violated when the Board refused to allow him to present additional witnesses at his disciplinary hearing. In their brief in support of the motion for summary judgment, Defendants claim that there was a reasonable basis for this refusal.[5]

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court set forth the due process requirements for a prison disciplinary hearing. It held, inter alia, that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. Noting that "the unrestricted right to call witnesses from the prison population carries obvious potential for disruption . . . ," the Court indicated that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority . . . ." Id. "Within the reasonable limitations necessary in the prison disciplinary

---

[5] Defendants also seek summary judgment on the grounds that they did not have personal involvement in Albert's disciplinary proceeding. Because the Court will grant summary judgment with respect to Defendants' claim that Albert was not denied due process, the Court need not consider this additional ground for summary judgment. Furthermore, Albert's motion for leave to amend his complaint to include the members of the disciplinary board will also be denied. (See Doc. No. 34.)

context, [the Court in Wolff] suggested, but did not require, that the disciplinary committee 'state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.'" Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (quoting Wolff, 418 U.S. at 566).

A prisoner's right to call witnesses in a disciplinary hearing is, therefore, a limited one. Woods v. Marks, 742 F.2d 770, 773 (3d Cir. 1984). The right is limited by the "broad discretion of prison officials to refuse witness requests that conflict with the need to maintain order in the institution." Id. The Third Circuit Court of Appeals has held that "it is not a denial of due process to deny an inmate an opportunity to present witnesses whose testimony would be irrelevant, repetitive, or unnecessary." Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007); see also Ponte v. Real, 471 U.S. 491, 499 (1985) ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority.").

In the instant case, the Board's decision expressly stated, "Although he wanted to call everyone in RHU out as a witness the board felt that it would be redundant to here [sic] the same story over and over. They all had 5 days to get their story straight and written down so that there would be no deviation." (Doc. No. 25-4 at 5.) Given the Third Circuit's holding that repetitive testimony is a valid reason for declining a prisoner's request for witnesses, the Court finds that the Board did not act improperly when it denied Albert's request. Accordingly, Albert was afforded the necessary process with respect to presentation of witnesses at his disciplinary hearing and no due process violation resulted. The Court will grant Defendants' motion for summary judgment with respect to this claim.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK T. ALBERT,** | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:07-CV-0007 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **KARNES, ET AL.,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

**AND NOW**, this 24th day of November, 2008, upon consideration of Defendants' motion for summary judgment (Doc. No. 25), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment (Doc. No. 25) is **GRANTED**.

2. The Clerk of Court is directed to enter **JUDGMENT** in favor of Defendants and against Plaintiff.

3. Any appeal from this order is **DEEMED** frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

4. Plaintiff's motion for leave to amend the complaint to include members of the Disciplinary Board (Doc. No. 34) is **DENIED** as moot.

5. The Clerk of Court is directed to **CLOSE** this case.

S/ Yvette Kane
Yvette Kane, Chief Judge
Middle District of Pennsylvania